WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

EUGENE F. HYDORN,                        )
                                         )
                    Plaintiff,           )
                                         )
          vs.                            )
                                         )
CAROLYN W. COLVIN, Acting                )
Commissioner of Social Security,         )
                                         )    No. 2:13-cv-1035-HRH
                    Defendant.           )
_____  )

O R D E R

        This is an action for judicial review of the denial of disability benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has timely

filed his opening brief,[1] to which defendant has responded.[2]  Oral argument was requested

but is not deemed necessary.

_____

        [1]Docket No. 24.

        [2]Docket No. 29.

-1-

Procedural Background

Plaintiff is Eugene F. Hydorn.  Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

On May 18, 2010, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that he became disabled on August 1, 2009. Plaintiff alleged that he was disabled because of bipolar disorder, antisocial personality disorder, emphysema, and migraines.  Plaintiff's applications were denied initially and upon reconsideration.  After a hearing on March 12, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On March 21, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 5, 2012 decision the final decision of the Commissioner. On May 20, 2013 plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

General Factual Background

Plaintiff was born on February 9, 1975.  Plaintiff was 37 years old at the time of the administrative hearing.  Plaintiff has a ninth-grade education.  His past relevant work includes work as a fast food worker, delivery driver, furniture installer, and warehouse worker.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

-2-

Social Security Act through September 30, 2012."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since August 1, 2009, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments:

---

[3]Admin. Rec. at 13.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 13.

chronic obstructive pulmonary disease (COPD)/asthma with cystic disease of the lungs, lumbar degenerative disc disease, bipolar disorder, status post hernia repair, migraines, and history of drug addiction and alcoholism....”[6]

At step three, the ALJ found that “[t]he severity of [plaintiff’s] impairments whether considered singly or in combination does not meet or equal the criteria in any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1....”[7]  The ALJ considered Listings 1.00 (muscoskeletal system), 3.00 (respiratory system), 11.00 (neurological), and 12.00 (mental disorders).[8]  The ALJ found that plaintiff’s mental impairments did not meet listings 12.04 (affective disorders) or 12.09 (substance addiction disorders).[9]

The ALJ considered the paragraph “B” criteria and found that plaintiff had moderate restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation that had been of extended duration.[10]  In making the determinations as

---

[6]Admin. Rec. at 13.

[7]Admin. Rec. at 13-14.

[8]Admin. Rec. at 14.

[9]Admin. Rec. at 14.

[10]Admin. Rec. at 14.

to the paragraph "B" criteria, the ALJ gave great weight to the opinions of Dr. Barrons[11] and Dr. Downs [12] because they were "consistent with the treatment record and with the record of the claimant's daily activities."[13]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following:  frequently climb ramps or stairs but never climb ladders, ropes, and scaffolds; occasionally reach overhead bilaterally; must avoid concentrated exposure to temperature extremes, wetness, or humidity, environmental irritants (such as fumes, odors, dusts and gases), poorly ventilated areas, use of moving machinery, and exposure to unprotected heights. The claimant is limited to simple, routine, tasks with only occasional interaction with the public, coworkers, and supervisors.  The claimant would need to be employed in a low stress job defined as a job where only simple decisions are being made with only occasional changes in the work setting and no fast-paced production rate requirements.[14]

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not credible to the extent they are inconsistent

---

[11]Heather Barrons, Psy.D., was a non-examining source.  Admin. Rec. at 108-110.

[12]Mary Downs, Ph.D., was a non-examining source.  Admin. Rec. at 89-90.

[13]Admin. Rec. at 14.

[14]Admin. Rec. at 15.

with the above residual functional capacity assessment."[15]  The ALJ found plaintiff's statements less than credible because plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[16]  The ALJ noted that plaintiff reported that he "mows the lawn, mops, sweeps, does laundry, straightens his home, drives, uses public transportation, shops, pays bills and manages money, prepares simple meals, visits his neighbor, reads the newspaper, and watches television...."[17]  The ALJ also noted that "[t]he record ... indicates that plaintiff is well enough to travel...."[18]

The ALJ found plaintiff's symptom statements regarding his mental impairments less than credible because the medication that has been prescribed has "been relatively effective in controlling [his] symptoms[;]" because although plaintiff has not always been compliant in taking his medications, his "condition did not significant[ly] deteriorate, which suggests that [plaintiff's] impairments are not as severe as he has alleged[;]" and because his statements were inconsistent with the medical record.[19]

The ALJ found plaintiff's statements regarding his physical impairments less than

---

[15]Admin. Rec. at 16.

[16]Admin. Rec. at 16.

[17]Admin. Rec. at 16.

[18]Admin. Rec. at 16.

[19]Admin. Rec. at 16-17.

credible because plaintiff's treatment had been conservative; there were gaps in his treatment; and his statements were inconsistent with the medical record.[20]  The ALJ noted that plaintiff's migraines were controlled by over-the-counter medication and that he continued to smoke despite his COPD; that plaintiff had a "poor performance on pulmonary function testing in May 2010, which further diminishes his credibility regarding his allegations[;]" and that there was no evidence in the treatment records to support plaintiff's "testimony of hand numbness that causes him to drop items."[21]

The ALJ also appeared to find plaintiff's pain and symptom statements less than credible because the record showed evidence of narcotic-seeking behavior.[22]

In assessing plaintiff's RFC, the ALJ gave significant weight to the opinion of Dr. Orenstein.[23]  The ALJ gave less weight to Dr. Schenk's opinion.[24]  The ALJ considered Dr.

---

[20]Admin. Rec. at 17.

[21]Admin. Rec. at 17.

[22]Admin. Rec. at 17.

[23]Admin. Rec. at 17.  On November 13, 2010, Marilyn Orenstein, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing and pulling; could climb ramps/stairs frequently; could never climb ladders/ropes/scaffolds; was unlimited as to balancing, stooping, kneeling, crouching, and crawling; and should avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards.  Admin. Rec. at 106-108.

[24]Admin. Rec. at 18.  On June 30, 2010, Paul Schenk, M.D., opined that plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for 2 hours;
(continued...)

Barrons'[25] and Dr. Downs'[26] opinions, but, the ALJ did not assign any specific weight to

_____

[24](...continued)
sit for 6 hours; was unlimited as to pushing/pulling; could frequently climb ramps/stairs; could never climb ladders/ropes/scaffolds; was unlimited as to balancing, stooping, kneeling, crouching, and crawling; should avoid concentrated exposure to extreme heat, cold, and humidity; should avoid all exposure to fumes, odors, gases, poor ventilation and hazards; and was unlimited as to noise and vibration.  Admin. Rec. at 69-71.

[25]On November 3, 2010, Dr. Barrons opined that plaintiff was not significantly limited in his ability to remember locations and work-like procedures; to under-stand/remember/carry out very short and simple instructions; to make simple work-related decisions; to ask simple questions or request assistance; to be aware of normal hazards and take appropriate precautions; and to travel in unfamiliar places or use public transporta-tion.  Admin. Rec. at 108-110.   She opined that plaintiff was moderately limited in his ability to understand/remember/carry out detailed instructions; to maintain concentration and attention for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others.  Admin. Rec. at 109-110.  Dr. Barrons concluded that plaintiff would be "[a]ble to sustain a simple routine over a 40 hour workweek."  Admin. Rec. at 110.

[26]On August 2, 2010, Mary Downs, Ph.D., opined that plaintiff had moderate restrictions of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace; but no episodes of decompensation.  Admin. Rec. at 68.  Dr. Downs further opined that plaintiff was not significantly limited in his ability to remember locations and work-like procedures; to understand/remember/carry out very short and simple instructions;  to make simple work-related decisions; to ask simple questions or request assistance; to be aware of normal

(continued...)

them.[27]   The ALJ gave little weight to Dr. Geary's[28] opinion as well as Dr. Semino's

---

[26](...continued)
hazards; and to travel to unfamiliar places or use public transportation.  Admin. Rec. at 72-73.   She opined that plaintiff was moderately limited in his ability to under-stand/remember/carry out detailed instructions; maintain concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain a routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Admin. Rec. at 72-73.  Dr. Downs concluded that plaintiff would be "able to meet the basic mental demands of competitive, remunerative unskilled work with limited social interaction on a sustained basis."  Admin. Rec. at 90.

[27]Admin. Rec. at 18.

[28]On July 15, 2010, Brent Geary, Ph.D. did an evaluation of plaintiff and opined that plaintiff

> appears to be mildly limited in his memory for simple material,
> moderate for detailed.  He would require extra repetition and
> reminders regarding work details, particularly complicated
> ones.  Eugene appears to be markedly limited in his ability to
> maintain concentration and persist at tasks.  He is very much
> reduced in motivation and he has trouble with prolonged
> attention and focus.  Eugene would require extensive monitor-
> ing and supervision on a job.  Mr. Hydorn seems mildly
> limited in his ability to get along with coworkers and supervi-
> sors.  He seems generally capable but he does have a temper
> that flares on occasion.  He would probably encounter moder-
> ate difficulties dealing with the public due to the pressure of

(continued...)

opinion.[29]   The ALJ gave little weight to the September 2009 Seriously Mentally Ill

determination[30] and to the statements of plaintiff's sister.[31]

At step four, the ALJ found that plaintiff "is unable to perform any past relevant

_____

[28](...continued)

> such positions.   Mr. Hydorn seems markedly limited in
> adaptation.   He has a history of mood swings, psychotic
> symptoms, and psychiatric hospitalization.   He is diminished
> in his ability to cope with customary work stress and his
> slowed pace would cause difficulties in the timely completion
> of work duties.

Admin. Rec. at 507.

[29]Admin. Rec. at 18.  Dr. Houshang Semino was plaintiff's treating psychiatrist since October 27, 2008.  Admin. Rec. at 425-428, 431-432, 434-439, 442-445, 447, 451-452, 454-462, 465-470, 596-597, 603-606, 625-626, 628-633, 731-732 & 736.  Dr. Semino opined that plaintiff's impairment as to his ability to relate to other people was moderately severe; that his degree of restriction of daily activities was moderate; that his deterioration of personal habits was moderate; that his degree of constriction of interests was moderately severe; that his limitation as to the ability to understand/carry out/remember instructions was moderately severe; that his limitation as to the ability to perform complex tasks was moderately severe; that his limitation as to the ability to perform repetitive tasks was moderate; and that his limitation as to his ability to perform varied tasks was moderately severe.  Admin. Rec. at 421-422.

[30]On September 1, 2009, Lorilyn Brown wrote that plaintiff "has severe depression, anxiety, and anger.  [He] takes his anger out on others.  [He] states he hears voices.  He spent a week in Aurora 2 weeks ago for suicidal ideation.  [He is] very forgetful and isolative.  [He does not] take care of basic needs when depressed."  Admin. Rec. at 463.  She assessed plaintiff's GAF as 50.  Admin. Rec. at 463.  She also noted that plaintiff would frequently be disruptive at work, neglects his basic needs, needs assistance in caring for himself, and is seriously disruptive to family and/or community.  Admin. Rec. at 463.

[31]Admin. Rec. at 18-19.  Plaintiff's sister, Vickie Winter, completed a third-party function report on June 30, 2010.  Admin. Rec. at 246-253.

work....”[32]

At step five, the ALJ found that “there are jobs that exist in significant numbers in the national economy that the claimant can perform....”[33]  The ALJ relied on the testimony of the vocational expert and found that plaintiff could work as a silver wrapper and a small products assembler.[34]

Thus, the ALJ concluded that plaintiff “has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision....”[35]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the “power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner....”  The court “properly affirms the Commissioner’s decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards.”  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  “Substantial evidence is ‘more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’”  <u>Id.</u>

_____

[32]Admin. Rec. at 19.

[33]Admin. Rec. at 19.

[34]Admin. Rec. at 20.

[35]Admin. Rec. at 20.

(quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff argues that the ALJ erred by 1) rejecting Dr. Semino's opinion, 2) rejecting Dr. Geary's opinion, 3) rejecting the SMI determination made by Ms. Brown, 4) finding plaintiff's pain and symptom statements less than credible, and 5) giving little weight to the lay testimony of plaintiff's sister.

### Dr. Semino

On March 17, 2010, Dr. Semino, plaintiff's treating psychiatrist, opined that plaintiff's impairment as to his ability to relate to other people was moderately severe; that his degree of restriction of daily activities was moderate; that his deterioration of personal habits was moderate; that his degree of constriction of interests was moderately severe; that his limitation as to the ability to understand/carry out/remember instructions was

moderately severe; that his limitation as to the ability to perform complex tasks was moderately severe; that his limitation as to the ability to perform repetitive tasks was moderate; and that his limitation as to his ability to perform varied tasks was moderately severe.[36]   Dr. Semino also opined that plaintiff's medications caused dizziness and sedation.[37]

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Here, Dr. Semino's opinion was contradicted by other doctors, namely Dr. Downs and Dr. Barrons. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Semino's opinion.

The ALJ gave three specific reasons for giving little weight to Dr. Semino's opinion:

---

[36]Admin. Rec. at 421-422.

[37]Admin. Rec. at 422.

1) the opinion was "not supported by the doctor's own treatment notes, which ... show stability as well as increased GAF scores", 2) "the assessment is in checklist format without much explanation for its conclusions[,]" and 3) "many of the limitations cited are broad and do not detail specific work restrictions."[38]   Plaintiff argues that none of these were legitimate reasons for rejecting Dr. Semino's opinion.

The first reason given by the ALJ was that Dr. Semino's opinion was not supported by his treatment notes, which showed stability as well increased GAF scores.   This was not a legitimate reason because Dr. Semino's treatment notes actually show that plaintiff's condition got worse at times.   For example, in August 2009, Dr. Semino noted that plaintiff's condition was worse and his GAF score was 50[39] and plaintiff reported "an increase in voices as of late[]...."[40]   In October 2009, plaintiff reported that he was still feeling anxious, Dr. Semino noted that his condition was unchanged; and plaintiff's GAF score was 50.[41]   In November 2009, plaintiff continued to report that he was feeling anxious; Dr. Semino noted that plaintiff's condition was unchanged; and plaintiff's GAF score was

---

[38]Admin. Rec. at 18.

[39]Admin. Rec. at 451-452.

[40]Admin. Rec. at 447.

[41]Admin. Rec. at 438-439.

50.[42]  On March 2, 2011, plaintiff's mood was depressed and anxious; and his GAF score

was 40.[43]  On May 2, 2011, plaintiff's GAF score was again only 50.[44]  And in August 2011,

plaintiff reported that "he still hears voices that tell him derogatory things about himself."[45]

While it is true that shortly before the administrative hearing, plaintiff's GAF score was

60,[46] which does indicate some improvement, a GAF score of 60 does not mean that plaintiff

is not disabled.  See Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1164-65 (9th

Cir. 2012) (remanding for benefits even though Brewes had been assigned GAF scores as

high as 60).  Moreover, as the Ninth Circuit has observed, "[t]hat a person who suffers from

severe panic attacks, anxiety, and depression makes some improvement does not mean that

the person's impairments no longer seriously affect h[is] ability to function in a workplace."

Holohan, 246 F.3d at 1205; see also, Petty v. Astrue, 550 F. Supp. 2d 1089, 1099 (D. Ariz.

2008) ("The [c]ourt initially notes that a condition can be stable but disabling.").  When Dr.

Semino's treatment notes are considered as a whole, they show that at times plaintiff did

better than other times, but that plaintiff continued to have symptoms as a result of his

bipolar disorder that would affect his ability to sustain employment, symptoms that were

---

[42]Admin. Rec. at 436-437.

[43]Admin. Rec. at 628-629.

[44]Admin. Rec. at 626.

[45]Admin. Rec. at 738.

[46]Admin. Rec. at 731.

supported by Dr. Semino's objective findings.[47]

The second reason that the ALJ gave for giving little weight to Dr. Semino's opinion was that he used a "checklist" form.  This was not a legitimate reason to reject Dr. Semino's opinion because, although his opinion was expressed on a "checklist" form, it was more than adequately supported by Dr. Semino's treatment notes dating back to 2008, which reflect medical signs associated with bipolar disorder[48] and symptoms of depressed mood, anxiety, anger, and auditory hallucinations.[49]  While an ALJ may properly reject a treating physician's opinion which is in the form of a checklist if that opinion is not supported by the record as a whole or by objective medical findings, Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004), Dr. Semino's opinion was adequately supported by his treatment notes.  His treatment notes provide "objective medical evidence of the limitations asserted in  his report...." Id. at 1195 n.3.

The third reason given by the ALJ for giving Dr. Semino's opinion little weight was that the limitations that Dr. Semino assessed were broad and did not relate to specific work

---

[47]See, e.g., Admin. Rec. 438 (mental status exam showed depressed, anxious, angry mood), 442 (mental status exam showed depressed, anxious, angry mood and fair insight and judgment), 451 (mental status exam showed depressed, angry mood and fair insight and judgment) & 731 (mental status exam showed agitated psychomotor activity and anxious mood).

[48]Admin. Rec. at 438-439, 442-443, & 451-452.

[49]Admin. Rec. at 434-439, 451-452, 468 & 731-732.

restrictions.  This was not a legitimate reason because at least some of the limitations found by Dr. Semino directly relate to work activities.  For example, Dr. Semino opined that plaintiff's ability to relate to other people was moderately severe as was his ability to understand, carry out, and remember instructions and he opined that plaintiff's ability to perform complex and varied tasks was moderately limited.  These are limitations that directly relate to plaintiff's capacity to function in the work place.

The ALJ also appeared to rely on the opinions of Dr. Downs and Dr. Barrons[50] to reject Dr. Semino's opinion.  Although the ALJ did not assign any specific weight to the opinions of Dr. Barrons and Dr. Downs,[51] she appeared to give them more weight than Dr. Semino's opinion.  The ALJ's finding that plaintiff was limited to "simple, routine, tasks with only occasional interaction with the public, coworkers, and supervisors"[52] is consistent with Dr. Downs' and Dr. Barrons' opinions, thus indicating that the ALJ gave these two

---

[50]Dr. Downs opined that plaintiff would be "[a]ble to meet the basic mental demands of competitive, remunerative unskilled work with limited social interaction on a sustained basis."  Admin. Rec. at 90.  Dr. Barrons opined that plaintiff would be "[a]ble to sustain a simple routine over a 40 hour workweek."  Admin. Rec. at 110.

[51]Contrary to plaintiff's contention, the ALJ did not expressly assign "significant weight" to the opinions of Drs. Barrons and Downs.  The ALJ did expressly assign significant weight to one non-examining doctor, but that was Dr. Orenstein, who opined as to plaintiff's physical capacities, not his mental capacities.  Because the ALJ did not use the doctors' names in her order, but rather referred to exhibit numbers, she made it more difficult for the reader to figure out which doctor's opinion she was discussing.

[52]Admin. Rec. at 15.

opinions significant weight.  But, because Dr. Barrons and Dr. Downs were non-examining

doctors, their opinions by themselves cannot "constitute substantial evidence that justifies

the rejection of the opinion of either an examining physician <u>or</u> a treating physician."

<u>Lester</u>, 81 F.3d at 831 (emphasis in original).

In sum, the ALJ erred in rejecting Dr. Semino's opinion.

<u>Dr. Geary</u>

On July 15, 2010, Dr. Geary opined that plaintiff

> appears to be mildly limited in his memory for simple material,
> moderate for detailed.  He would require extra repetition and
> reminders regarding work details, particularly complicated
> ones.  Eugene appears to be markedly limited in his ability to
> maintain concentration and persist at tasks.  He is very much
> reduced in motivation and he has trouble with prolonged
> attention and focus.  Eugene would require extensive monitor-
> ing and supervision on a job.  Mr. Hydorn seems mildly
> limited in his ability to get along with coworkers and supervi-
> sors.  He seems generally capable but he does have a temper
> that flares on occasion.  He would probably encounter moder-
> ate difficulties dealing with the public due to the pressure of
> such positions.  Mr. Hydorn seems markedly limited in
> adaptation.  He has a history of mood swings, psychotic
> symptoms, and psychiatric hospitalization.  He is diminished
> in his ability to cope with customary work stress and his
> slowed pace would cause difficulties in the timely completion
> of work duties.[53]

The ALJ gave Dr. Geary's opinion little weight because 1) it was "not supported by

[Dr. Geary's] own findings", 2) it was not consistent with plaintiff's treatment records

---

[53]Admin. Rec. at 507.

"which show[] significant improvement in [plaintiff's] mental functioning", 3) it "is rather sparse and conclusory, offering little explanation for the limitations set forth", and 4) it "is ... vague and imprecise, using such language as 'considerable supervision.'"[54]  Plaintiff argues that none of these were legitimate reasons for giving Dr. Geary's opinion little weight.

The first reason given by the ALJ was not legitimate.  Dr. Geary's opinion was supported by his own findings.  Dr. Geary found that plaintiff had a flat affect, that his "short-term recall was mildly impaired", and that during the mental status exam, plaintiff had "difficulty maintaining concentration and his cognitive pace was quite slow" and that his "comparative thinking, expression of common sense reasoning, and abstraction" were "weak".[55]  While, as defendant points out, Dr. Geary also found that plaintiff was oriented, reported a "mellow" mood, demonstrated normal psychomotor activity, had essentially normal speech; essentially intact judgment; and intact insight,[56] these "normal" mental status findings do not mean that Dr. Geary's opinion was inconsistent with his findings. The limitations that Dr. Geary opined plaintiff had were based on specific findings made by Dr. Geary, not on the findings to which defendant cites.

---

[54]Admin. Rec. at 18.

[55]Admin. Rec. at 504 & 506.

[56]Admin. Rec. at 504.

The second reason given by the ALJ for rejecting Dr. Geary's opinion was that it was inconsistent with plaintiff's treatment notes, which the ALJ found showed significant improvement. But, as discussed above, the ALJ erred in finding that plaintiff's treatment notes showed significant improvement. Thus, this was not a legitimate reason to reject Dr. Geary's opinion.

The third reason given by the ALJ was that Dr. Geary's opinion was sparse and conclusory. This was not a legitimate reason because Dr. Geary's opinion was based on his extensive examination of plaintiff. Moreover, if the ALJ believed that the Dr. Geary's opinion was sparse and conclusory, then she had a duty to develop the record on this issue. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (Because the ALJ has a duty to fully and fairly develop the record, "[i]f the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them"). The same would be true as to the ALJ's fourth reason, that Dr. Geary's opinion was "vague and imprecise." If the ALJ did not understand what Dr. Geary meant by "considerable supervision" or other terms that Dr. Geary used, then the ALJ had a duty to conduct an appropriate inquiry.

Finally, as discussed above, Drs. Downs' and Barrons' opinions cannot by themselves constitute substantial evidence supporing the ALJ's rejection of Dr. Geary's

opinion.  Thus, the ALJ erred in rejecting Dr. Geary's opinion.

<u>Ms. Brown's SMI Determination</u>

On September 1, 2009, Lorilyn Brown completed a SMI determination, in which she noted that plaintiff had severe depression, anxiety, and anger; and she opined that plaintiff would frequently be disruptive at work, neglects his basic needs, needs assistance in caring for himself, and is seriously disruptive to his family/community.[57]  The ALJ gave Brown's opinion little weight because it was not from an acceptable medical source and because it was inconsistent with the more recent evidence that showed improvement.[58]

As discussed above, the ALJ erred in finding that plaintiff's bipolar disorder was improving.  Plaintiff also argues that it was error for the ALJ to reject Brown's opinion on the grounds that she was not an acceptable medical source.  Plaintiff points out that

> an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

SSR 06-3p.  Plaintiff seems to be suggesting that the ALJ should have given Brown's

---

[57]Admin. Rec. at 463.

[58]Admin. Rec. at 18.

opinion more weight than those of the non-examining physicians (Downs and Barrons), even though she was not an acceptable medical source, because of her treatment relationship with plaintiff.  However, there is nothing in the record that indicates that Brown had a treatment relationship with plaintiff.  The only evidence in the record from Brown is the SMI determination.  Thus, it was not error for the ALJ to give little weight to Brown's opinion because she was not an acceptable medical source.

Plaintiff's credibility

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)).  "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." Id. (quoting Vasquez, 572 F.3d at 591).  "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  "In evaluating the claimant's testimony, the ALJ may use

'ordinary techniques of credibility evaluation.'"  Id. (quoting Turner v. Comm'r of Social

Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider

inconsistencies either in the claimant's testimony or between the testimony and the

claimant's conduct, unexplained or inadequately explained failure to seek treatment or to

follow a prescribed course of treatment, and whether the claimant engages in daily

activities inconsistent with the alleged symptoms[.]"  Id. (internal citations omitted).

"While a claimant need not  vegetate in a dark room in order to be eligible for benefits, the

ALJ may discredit a claimant's testimony when the claimant reports participation in

everyday activities indicating capacities that are transferable to a work setting[.]"  Id. at

1112-13 (internal citations omitted).  "Even where those activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the extent

that they contradict claims of a totally debilitating impairment."  Id. at 1113.

The ALJ found plaintiff's pain and symptom statements less than credible because

plaintiff "described daily activities that are not limited to the extent one would expect,

given the complaints of disabling symptoms and limitations."[59]  The ALJ noted that

plaintiff had reported that he "mows the lawn, mops, sweeps, does laundry, straightens

his home, drives, uses public transportation, shops, pays bills and manages money,

prepares simple meals, visits his neighbor, reads the newspaper, and watches

---

[59]Admin. Rec. at 16.

television...."[60]  The ALJ also noted that "[t]he record ... indicates that plaintiff is well enough to travel...."[61]

This was not a clear and convincing reason to discount plaintiff's pain and symptom testimony because the ALJ did not explain how these activities conflict with the limitations plaintiff has claimed.  This evidence shows that plaintiff does some simple chores and tasks, but that he does so at his own pace and with frequent breaks.  For example, while plaintiff does sweep, mop and mow the grass, he reports that he does these tasks only once a week, with breaks, and it takes him several hours to complete these tasks.[62]  As for his ability to travel, plaintiff did so to see his dying mother.[63]  Plaintiff's description of his daily activities do not indicate that he is "'able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Fair, 885 F.2d at 603).

The ALJ also found plaintiff's symptom statements regarding his mental impairments less than credible because the medication that has been prescribed has "been

---

[60]Admin. Rec. at 16.

[61]Admin. Rec. at 16.

[62]Admin. Rec. at 264.

[63]Admin. Rec. at 596 & 777.

relatively effective in controlling [his] symptoms."[64]  This was not a clear and convincing

reason because the ALJ only cited to three treatment notes in support of this conclusion.[65]

When the record as a whole is considered, it shows that despite medication, plaintiff

continues to have severe depression, mood swings, and anxiety.[66]

The ALJ also found plaintiff's symptom statements less than credible because

although plaintiff has not always been compliant in taking his psychiatric medications, his

"condition did not significant[ly] deteriorate, which suggests that [plaintiff's] impairments

are not as severe as he has alleged."[67]  The ALJ specifically points to the times when

plaintiff was off his medications while visiting his mother in Florida[68] and when he told his

pain doctor in January 2012 that he had lost his prescriptions for his psychiatric

medications.[69]  The ALJ notes that in both incidents, plaintiff's mental condition did not

deteriorate.[70]

Plaintiff argues that this was not a clear and convincing reason because there is

_____

[64]Admin. Rec. at 16.

[65]Admin. Rec. at 16.

[66]Admin. Rec. at 434-439, 451-452, 468, & 731-732.

[67]Admin. Rec. at 16.

[68]Admin. Rec. at 736.

[69]Admin. Rec. at 755.

[70]Admin. Rec. at 16.

evidence that his impairments affect treatment as well as his ability to afford medication. A claimant's inability to afford his medication should not negatively impact the claimant's credibility.  See Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) ("we have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it").  There is evidence in the record that plaintiff could not afford his breathing treatments,[71] but, there is no evidence in the record that plaintiff could not afford his psychiatric medication, which is what the ALJ was discussing here.  However, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal citation omitted).  There is evidence in the record that plaintiff's mental impairments affected his ability to take his medications.[72]  Moreover, the ALJ's conclusion that plaintiff's condition did not deteriorate when he was off his medications is not entirely accurate.  In January 2012, when plaintiff had been off his mediation for a while, Dr. Semino's mental status exam showed that plaintiff's mood was anxious and his  psychomotor activity agitated and Dr. Semino increased plaintiff's Seroquel dose.[73]  Thus, this was not a clear and convincing reason to

---

[71]Admin. Rec. at 44.

[72]Admin. Rec. at 248.

[73]Admin. Rec. at 731.

find plaintiff's statements less than credible.

The ALJ also found plaintiff's symptom statements regarding his mental limitations less than credible because they were inconsistent with the medical record.[74] The ALJ stated that since plaintiff had been discharged from Aurora in 2009, his "condition has been relatively stable despite being off medications at times and testing positive for marijuana...."[75] The ALJ noted that Dr. Semino had described plaintiff's condition as "stable" in October 2009, December 2009, and April 2010.[76] The ALJ also stated that plaintiff's GAF scores had generally been 55 or 60, suggesting only moderate mental limitations, rather than severe limitations as alleged by plaintiff.[77]

This was not a clear and convincing reason because the ALJ isolated portions of the record where plaintiff reported that he was doing "okay", where Dr. Semino noted that his condition was "stable", and where his GAF scores were 55-60, but ignored the evidence that was to the contrary.  The ALJ must consider the record as a whole and not isolate evidence that detracted from a finding of disability. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (the ALJ must weigh both evidence that supports and that which detracts

─────────────

[74]Admin. Rec. at 16-17.

[75]Admin. Rec. at 16.

[76]Admin. Rec. at 16-17.

[77]Admin. Rec. at 17.

from his conclusion).  In addition, the fact that plaintiff's GAF scores were between 55-60 should not impact his credibility because a GAF score of 60 is not inconsistent with disability.  See Brewes, 682 F.3d at 1164-65 (finding the plaintiff disabled even though she had GAF scores as high as 60 at times).   Also, "stable" does not mean a lack of limitation nor does it indicate an ability to sustain competitive work activity.  See Petty, 550 F. Supp. 2d at 1099 ("The [c]ourt initially notes that a condition can be stable but disabling.").

As for plaintiff's pain and symptom statements regarding his physical impairments, the ALJ found these statements less than credible because they were inconsistent with the medical evidence.  The ALJ found that plaintiff's treatment had been conservative; there were gaps in his treatment; and his statements were inconsistent with the medical record. The ALJ noted that plaintiff's migraines were controlled by medication and that plaintiff continued to smoke despite having COPD.[78]  The ALJ also noted that plaintiff had poor performance on a pulmonary function test in May 2010.[79]  And, the ALJ found that "[t]he treatment record does not corroborate [plaintiff's] testimony of hand numbness that causes him to drop items."[80]

These were not clear and convincing reasons to find plaintiff's pain and symptom

---

[78]Admin. Rec. at 17.

[79]Admin. Rec. at 17.

[80]Admin. Rec. at 17.

statements less than credible.  Plaintiff's treatment has not been routine and conservative as evidenced by his having undergone cervical and lumbar epidural steroid injections and medial branch blocks.[81]  He has sought emergency room treatment for his headaches.[82]  The record indicates that he was attempting to quit smoking and that he had reduced the number of cigarettes he was smoking per day.[83]  Moreover, the fact that he cannot quit smoking is an improper reason to find his pain and symptom statements less than credible.  See Bray, 554 F.3d at 1227 (suggesting that the ALJ's reliance on Bray's continued smoking when assessing credibility may have been erroneous because "[i]t is certainly possible that Bray was so addicted to cigarettes that she continued smoking even in the face of debilitating shortness of breath and acute chemical sensitivity").  As for plaintiff's poor performance on the pulmonary function test, this would seem to support plaintiff's symptom statements, rather than detract from them.  And, there is evidence in the record to support plaintiff's testimony of hand numbness that causes him to drop items.  Treatment notes indicate that plaintiff has hand numbness, decreased hand grasp, and cramping of his hands, and plaintiff has had bilateral wrist injections.[84]

---

[81]Admin. Rec. at 572, 574, 575, 747, 771, 789, 795, 801 & 807.

[82]Admin. Rec. at 406-407, 646-647, 649-650 & 652-653.

[83]Admin. Rec. at 495-497 & 750.

[84]Admin. Rec. at 581, 671, 677, 681, 684, 755 & 791.

The ALJ also found that the record showed evidence of narcotic-seeking behavior,[85] referring to the time in 2009 when plaintiff checked out of the hospital against medical advice.[86]  Given that this occurred once, this was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

Lay testimony

Plaintiff's sister reported that she had to remind plaintiff daily to take his medications, that she assists him with household chores and shopping, that plaintiff has difficulties completing personal hygiene tasks, is argumentative with family and friends, and has difficulty walking, sustaining concentration, and following instructions.[87]  The ALJ gave this testimony little weight because plaintiff's sister is not a trained medical provider, because she is not a disinterested third party, and because her testimony is not consistent with the medical evidence.

"If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The first two reasons given by the ALJ were not proper reasons.  See Smolen, 80 F.3d at 1289 ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting

---

[85]Admin. Rec. at 17.

[86]Admin. Rec. at 636-637.

[87]Admin. Rec. at 246-253.

-30-

his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value[;] ... such lay witnesses will often be family members"). As for the third reason, that plaintiff's sister's testimony was inconsistent with the medical evidence, this too was an improper reason because the medical evidence supports plaintiff's sister's observations. In particular, Dr. Geary found that plaintiff had troubling concentrating and completing tasks and had trouble with anger. Thus, the ALJ erred in giving little weight to plaintiff's sister's testimony.

Remand

Because the ALJ erred in rejecting Dr. Semino's and Dr. Geary's opinions, in finding plaintiff's pain and symptom statements less than credible, and in giving plaintiff's sister's testimony little weight, the court must determine whether to remand this matter for further proceedings or an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from

> the record that the ALJ would be required to find the claimant
> disabled were such evidence credited.

Id.

Here, a remand for benefits is appropriate because Dr. Geary's and Dr. Semino's opinions should be credited as true, and the vocational expert testified that someone with the limitations found by Drs. Geary and Semino would not be able to sustain employment.[88]

Conclusion

The decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 4th day of August, 2014.

/s/ H. Russel Holland
United States District Judge

---

[88]Admin. Rec. at 50-51 & 53-55.